# 26-654

IN THE

# United States Court of Appeals

FOR THE NINTH CIRCUIT

⫸⫷

SCPS LLC; SSPS LLC,

*Plaintiffs-Appellees,*

*v.*

INDIVIDUAL CLAIMANT DEFENDANTS,

*Defendants-Appellants.*

*Appeal From the United States District Court
for the Central District of California
Case No. 2:25-cv-03255-MWF-SSC, District Judge Michael W. Fitzgerald*

## BRIEF FOR DEFENDANTS-APPELLANTS

Michael Kind
KIND LAW
5071 North Rainbow Boulevard
Suite 110
Las Vegas, Nevada 89130
702-337-2322

and

Ben Travis
BEN TRAVIS LAW, APC
12481 High Bluff Drive
Suite 300
San Diego, California 92130
619-353-7966

*Attorneys for Defendants-Appellants*

 (212) 719-0990
appeals@phpny.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iiv

STATEMENT OF JURISDICTION ..................................................................... 1

STATEMENT OF ISSUES .................................................................................. 2

STATUTES AND OTHER AUTHORITIES ........................................................ 3

INTRODUCTION ................................................................................................ 3

STATEMENT OF THE CASE ............................................................................. 4

    A.    The Parties ................................................................................................. 4

    B.    The Original Arbitration Terms ............................................................... 5

    C.    Appellants Send Dispute Notices Under the AAA Terms .................... 6

    D.    The Casinos Modify the Terms Nine Days Later ................................. 6

    E.    Appellants Opt Out and File with the AAA ......................................... 7

    F.    The Casinos' Evidence of Assent .......................................................... 7

    G.    The District Court Proceedings .............................................................. 8

    H.    The District Court's Order ....................................................................... 9

SUMMARY OF ARGUMENT ......................................................................... 10

ARGUMENT ..................................................................................................... 13

I.    THE CONVENTION DOES NOT APPLY BECAUSE THE
    UNDERLYING RELATIONSHIP IS ENTIRELY DOMESTIC .............. 13

A. The Convention Requires a Foreign Element Independent of the Arbitration Clause ................................................................13

B. The District Court's Authorities Support Reversal .............................16

C. The District Court's Error in Applying the Convention Rather Than Chapter 1 Was Dispositive .................................................19

II. APPELLEES FAILED TO PROVE ASSENT TO THE MODIFIED FORUM-SELECTION PROVISIONS ......................................................20

A. Appellees' Evidence Lacks Foundation ...............................................21

B. Appellees Did Not Provide Reasonably Conspicuous Notice That the Modification Would Apply to Pending Disputes ..............................23

C. Appellants' Express Rejection Precludes a Finding of Unambiguous Assent .................................................................27

III. THE MODIFIED FORUM-SELECTION PROVISIONS DO NOT APPLY TO DISPUTES ALREADY INVOKED UNDER THE ORIGINAL TERMS ................................................................29

A. The District Court Conflated the Scope Provision with the Forum-Selection Provisions ..............................................................30

B. The Language of the Forum-Selection Provisions is Prospective.......31

C. The District Court's Authorities Do Not Compel a Different Result..33

ii

IV. UNCONSCIONABILITY IS AVAILABLE AS A DEFENSE UNDER THE CONVENTION ..................................................................36

    A. GE Energy Establishes That Article II(3) Does Not Foreclose Domestic Defenses .................................................37

    B. The District Court Erred in Following Bautista .................................38

    C. This Court's Precedent Supports Applying Domestic Contract Defenses.................................................................39

    D. Unconscionability Is Available as a Defense Under Applicable Law 41

CONCLUSION ......................................................................43

# TABLE OF AUTHORITIES

## CASES

*Access Info. Mgmt. of Haw., LLC v. Shred-It Am., Inc.*,
   No. 10-00622, 2010 U.S. Dist. LEXIS 116862 (D. Haw. Nov. 2, 2010)............16

*Ahlstrom v. DHI Mortg. Co., L.P.*,
   21 F.4th 631 (9th Cir. 2021)....................................................................................20

*Ambrosia v. Blazesoft, Ltd.*,
   No. 25 C 1723, 2025 WL 2976477 (N.D. Ill. Oct. 21, 2025)......................18, 19

*Bauhinia Corp. v. China Nat'l Mach. & Equip. Imp. & Exp. Corp.*,
   819 F.2d 247 (9th Cir. 1987)................................................................................19

*Bautista v. Star Cruises*,
   396 F.3d 1289 (11th Cir. 2005).............................................................10, 38, 39

*Berman v. Freedom Fin. Network, LLC*,
   30 F.4th 849 (9th Cir. 2022).......................................................................*passim*

*Boatner v. SSPS LLC*,
   2025 U.S. Dist. LEXIS 232112 (S.D.N.Y. Nov. 25, 2025).........................18, 19

*Brier v. Northstar Marine, Inc.*,
   Civil Action No. 91-597(JFG), 1992 U.S. Dist. LEXIS 20931
   (D.N.J. Apr. 28, 1992)..........................................................................................14

*Dasher v. RBC Bank (USA)*,
   882 F.3d 1017 (11th Cir. 2018).............................................................................25

*Ensco Offshore Co. v. Titan Marine, L.L.C.*,
   370 F. Supp. 2d 594 (S.D. Tex. 2005)...................................................................18

*Franco v. Greystone Ridge Condominium*,
   39 Cal. App. 5th 221 (2019)....................................................................33, 34, 35

*GE Energy Power Conversion France SAS v. Outokumpu Stainless USA, LLC*,
   590 U.S. 432 (2020) ....................................................................................*passim*

iv

*Godun v. JustAnswer LLC,*
   135 F.4th 699 (9th Cir. 2025)......................................................................11, 21, 24

*Hansen v. LMB Mortg. Servs., Inc.,*
   1 F.4th 667 (9th Cir. 2021)........................................................................20

*Jackson v. Amazon.com, Inc.,*
   65 F.4th 1093 (9th Cir. 2023)....................................................................21

*Johnson v. Walmart Inc.,*
   57 F.4th 677 (9th Cir. 2023)......................................................................20

*Jones Day v. Orrick, Herrington & Sutcliffe, LLP,*
   42 F.4th 1131 (9th Cir. 2022)....................................................................13

*Jones v. Sea Tow,*
   30 F.3d 360 (2d Cir. 1994)..............................................................10, 14, 15, 17

*Klamath Water Users Protective Ass'n v. Patterson,*
   204 F.3d 1206 (9th Cir. 2000)....................................................................29

*Knutson v. Sirius XM Radio Inc.,*
   771 F.3d 559 (9th Cir. 2014)......................................................................20

*Lindo v. NCL (Bahamas), Ltd.,*
   652 F.3d 1257 (11th Cir. 2011) (Barkett, J., dissenting)....................................39

*Lochan v. Binance Holdings Ltd.,*
   2024 ONCA 784........................................................................................41

*Mar v. Perkins,*
   102 Cal. App. 5th 201 (2024)....................................................................27, 28

*Motorola Credit Corp. v. Uzan,*
   388 F.3d 39 (2d Cir. 2004)........................................................................40

*Nicosia v. Amazon.com, Inc.,*
   834 F.3d 220 (2d Cir. 2016)......................................................................22

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*,
   210 F.3d 1099 (9th Cir. 2000) ............................................................23

*OTO, L.L.C. v. Kho*,
   8 Cal. 5th 111 (2019) ........................................................................41

*Pearce v. 4 Pillars Consulting Group Inc.*,
   2021 BCCA 198 ................................................................................41

*Revitch v. DIRECTV, LLC*,
   977 F.3d 713 (9th Cir. 2020) ............................................................32

*Rogers v. Royal Caribbean Cruise Line*,
   547 F.3d 1148 (9th Cir. 2008) ......................................36, 37, 40, 42

*Roland Reinholtz v. Retriever Marine Towing & Salvage*,
   No. 92-14141-CIV-DAVIS, 1993 U.S. Dist. LEXIS 21598
   (S.D. Fla. May 21, 1993) ..................................................................14

*Russell v. Citigroup, Inc.*,
   748 F.3d 677 (6th Cir. 2014) ......................................................25, 32

*Semprini v. Wedbush Securities Inc.*,
   101 Cal. App. 5th 518 (2024) ...........................................................34

*Snow v. Eventbrite, Inc.*,
   No. 3:20-cv-03698-WHO, 2020 U.S. Dist. LEXIS 193249
   (N.D. Cal. Oct. 19, 2020) .................................................................22

*Soaring Wind Energy, LLC v. Catic USA Inc.*,
   946 F.3d 742 (5th Cir. 2020) ............................................................16

*Trudeau v. Google LLC*,
   349 F. Supp. 3d 869 (N.D. Cal. 2018) .........................................33, 35

*Uber Technologies Inc. v. Heller*,
   2020 SCC 16, [2020] 2 S.C.R. 118 ..............................................41, 42

*Zhang v. Dentons US LLP*,
   2021 WL 2392169 (C.D. Cal. June 11, 2021) ..............................16, 17

vi

**STATUTES**

9 U.S.C. §§ 1-16.................................................................................*passim*

9 U.S.C. § 2 .....................................................................................20, 38, 43

9 U.S.C. § 4 ...........................................................................................10, 19

9 U.S.C. § 16(a)(2) ......................................................................................1

9 U.S.C. § 16(a)(3) ......................................................................................1

9 U.S.C. §§ 201-208...........................................................................10, 18, 38

9 U.S.C. § 202 ...............................................................................*passim*

9 U.S.C. § 203 ..............................................................................................1

9 U.S.C. § 208 ...........................................................................................38

28 U.S.C. § 1291 ..........................................................................................1

28 U.S.C. § 1292(a)(1) .................................................................................1

28 U.S.C. § 1331 ..........................................................................................1

Cal. Civ. Code § 1670.5(a).........................................................................41

**OTHER AUTHORITIES**

Convention on the Recognition and Enforcement of Foreign Arbitral Awards,
    June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38.........................................*passim*

Convention on the Recognition and Enforcement of Foreign Arbitral Awards
    art. II(3), June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 .......................*passim*

Restatement (Third) of U.S. Law of Int'l Com. and Investor-State Arb.
    § 2.14(b)(1)............................................................................................40

S. Rep. No. 702, 91st Cong., 2d Sess. app. at 6 (1970)........................................15

## STATEMENT OF JURISDICTION

Appellees invoked, and the district court exercised, subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and 9 U.S.C. § 203 (actions arising under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 (the "Convention")). As explained in Argument I, Appellants contend the agreement does not fall under the Convention.

This Court has appellate jurisdiction under 28 U.S.C. § 1291 and 9 U.S.C. § 16(a)(3). The district court's order is final: Appellees' Complaint sought only declaratory and injunctive relief concerning which arbitral forum governs the parties' disputes, and the court resolved all claims. 6-ER-1205. The substantive claims are pending in the American Arbitration Association (the "AAA") arbitrations, not below.

Alternatively, this Court has jurisdiction under 28 U.S.C. § 1292(a)(1) and 9 U.S.C. § 16(a)(2). Appellees' motion sought to compel arbitration before ADR Chambers and to enjoin the pending AAA proceedings. 5-ER-955. By granting the motion as to the Wrong-Tribunal Claimants, the district court effectively enjoined Appellants from proceeding before the AAA. 1-ER-45–46. This injunctive relief is immediately appealable.

The district court entered its order on January 8, 2026. *Id.* Appellants timely filed their Notice of Appeal on February 3, 2026. 6-ER-1206.

1

## STATEMENT OF ISSUES

1. Whether an arbitration agreement "falls under" the Convention when the underlying relationship is entirely between U.S. companies and their U.S. consumers, and the only foreign element is the arbitration clause's selection of a Canadian forum and Canadian law.

2. Whether Appellees proved assent to a modified agreement's forum-selection provisions where (a) their only evidence of assent is a single undated "example" screenshot and conclusory assertions, (b) the generic account-access prompt did not disclose that the modification would reroute already-invoked AAA disputes to ADR Chambers in Ontario and was presented directly to represented Appellants rather than through counsel, and (c) Appellants expressly rejected the modification in writing.

3. Whether an agreement's modified forum-selection provisions stating that parties "may seek" arbitration before ADR Chambers in Ontario, Canada, apply retroactively to disputes for which Appellants had already invoked the earlier version of the agreement requiring arbitration before the AAA in the United States, where the scope provision was unchanged and appears in a separate section from the forum-selection provisions.

2

4. Whether unconscionability is available as a defense under the Convention's Article II(3) "null and void" exception, where the substantive law applicable to the agreement recognizes unconscionability as a contract defense.

## STATUTES AND OTHER AUTHORITIES

Pursuant to Ninth Circuit Rule 28-2.7, pertinent statutes and other authorities are included in the attached addendum.

## INTRODUCTION

Can a domestic company, facing arbitration demands from American consumers, escape those demands by modifying its terms of service to require arbitration in a foreign country and then invoking the Convention to shield that modification from judicial review? The district court said yes. That was error.

Appellants are American consumers who used online gaming platforms operated by Appellees, both Delaware LLCs (the "Casinos"). In June 2024, Appellants sent dispute notices invoking the AAA arbitration process then required by Appellees' Terms of Service ("Terms"). Nine days later, Appellees modified their Terms to require arbitration before ADR Chambers in Ontario, Canada. Appellants sent opt-out letters, filed their demands with the AAA, and proceeded under the original Terms. Appellees then sued to compel arbitration in Canada and enjoin the AAA proceedings. The district court granted that relief.

3

The district court erred in at least four respects. First, the Convention does not apply to this entirely domestic consumer dispute; a foreign forum-selection clause cannot supply the "reasonable relation" to a foreign state that 9 U.S.C. § 202 requires. Second, Appellants did not assent to the modified Terms. Appellees' evidence fails to establish what any Appellant actually saw or when, the manner of communication precluded notice, and Appellants explicitly rejected the modification in writing. Third, the modified forum provisions do not apply retroactively to disputes already initiated under the original Terms. Fourth, even if the Convention applies, unconscionability remains available as a defense.

If affirmed, the district court's order would create a roadmap for any domestic company seeking to evade U.S. consumer protection laws: draft an arbitration clause selecting a foreign forum, invoke the Convention, and claim immunity from unconscionability review. Under the district court's reasoning, a website's online terms could purport to transfer a consumer's house to the website operator, and so long as the drafter selected a foreign arbitral forum, courts would be powerless to intervene. That cannot be the law. This Court should reverse.

## STATEMENT OF THE CASE

### A. The Parties

Plaintiffs-Appellees SCPS LLC and SSPS LLC are Delaware limited liability companies that operate online gaming platforms under the names Zula Casino and

Sportzino, respectively. 6-ER-1187. The platforms allow users to play casino-style games using virtual currency. 5-ER-998. Blazesoft, Ltd., a Canadian corporation, provides "operational services" to both platforms. *Id.*

The platforms operate under a "sweepstakes" model that has drawn regulatory scrutiny. The New York Attorney General issued cease-and-desist letters to the platforms, stating that "[o]nline sweepstakes casinos are illegal, dangerous, and can seriously ruin people's finances." 5-ER-924. California has enacted legislation addressing such platforms. 2-ER-55 (citing Cal. Penal Code § 337o). Other states have taken similar action. 5-ER-924. The platforms' Terms impose mandatory arbitration and prohibit class actions, leaving individual arbitration as consumers' sole avenue for relief. 5-ER-1021–26; 6-ER-1096–1102.

Defendants-Appellants are individual consumers who used the platforms and filed arbitration demands with the AAA in August 2024. 5-ER-924. The district court classified them as "Wrong-Tribunal Claimants," adopting Plaintiffs-Appellees' nomenclature, because they filed with the AAA rather than ADR Chambers. 1-ER-29.

**B. The Original Arbitration Terms**

To register for the platforms, users must accept the Terms through Appellees' online registration interface. 5-ER-1000. The Terms in effect in early 2024 contained an arbitration provision in Section 12. The scope provision, Section 12.2, required

5

that "any past, pending, or future dispute, claim or controversy" would "be determined by arbitration." 5-ER-1022; 6-ER-1097. Section 12.5 specified that arbitration would "be conducted by the American Arbitration Association ('AAA')," and Section 12.6(e) provided that "except as otherwise may be required by the AAA Rules, the arbitration will be held in Washington DC." 5-ER-1023, 1025; 6-ER-1098–1100.

Section 12.7 permitted users to opt out, but only "IF YOU HAVE NOT PREVIOUSLY AGREED TO AN ARBITRATION AGREEMENT IN CONNECTION WITH YOUR USE OF OUR SERVICE." 5-ER-1025; 6-ER-1100.

### C. Appellants Send Dispute Notices Under the AAA Terms

In June 2024, Appellants sent dispute notices to the Casinos complying with Section 12.4's requirement of 30 days' notice before initiating arbitration. 2-ER-116. Every Wrong-Tribunal Claimant sent a dispute notice before the June 28, 2024, modification. 6-ER-1195 (¶ 49); 1-ER-40. At the time, the Terms required arbitration before the AAA in Washington, D.C., subject to the AAA rules on locale. 5-ER-1024–25; 6-ER-1099–1100.

### D. The Casinos Modify the Terms Nine Days Later

On June 28, 2024, nine days after receiving the dispute notices, the Casinos revised their Terms. 2-ER-116 (¶ 20); 6-ER-1192 (¶ 30). The modification changed Section 12.5 to state that parties "may seek" arbitration before ADR Chambers

instead of the AAA, and changed Section 12.6(e) to specify "Toronto, Ontario" instead of "Washington DC." 5-ER-1047, 1049. Section 12.2's scope provision, governing "past, pending, or future" disputes, remained unchanged. *Compare* 5-ER-1022 *with* 5-ER-1046; *compare* 6-ER-1097 *with* 6-ER-1124.

### E. Appellants Opt Out and File with the AAA

On July 23, 2024, and again on August 20, 2024, Appellants sent letters stating that Appellants "unequivocally reject and opt out of the changes to the terms of the arbitration agreement" and intended "to enforce the agreement effective March 7, 2024, that was mutually entered into prior to the attempted changes." 2-ER-117 (¶ 21), 213–14, 216.

On August 14 and 16, 2024, Appellants filed arbitration demands with the AAA against the Casinos, requesting San Diego, California, as the hearing location. 6-ER-1195 (¶¶ 52–53); 2-ER-117 (¶¶ 22-23).

### F. The Casinos' Evidence of Assent

In support of their motion to compel, Appellees submitted the Declaration of Yuliy German, Senior Vice President of Business Operations for Blazesoft. 5-ER-997. German stated that Blazesoft employees "queried the customer databases" to identify users who logged in on or after June 28, 2024, and asserted that any such user "was required to accept the revised Terms and Conditions." *Id.* at 1002–03 (¶¶ 18–20).

German attached a single, undated screenshot described as an "example" of the acceptance screen for Zula Casino. *Id.* at 1001 (¶ 12); 6-ER-1164. The screenshot did not identify the arbitration provision, ADR Chambers, Ontario, or any effect on disputes already invoked under the prior AAA Terms. Instead, it referred generically to updates across six documents. No screenshot was provided for Sportzino. No evidence was submitted showing what any specific Appellant saw on any specific date, or whether the interface varied across devices, browsers, or time periods. *See* 5-ER-997.

### G. The District Court Proceedings

On April 14, 2025, Appellees filed this action seeking declaratory and injunctive relief. 6-ER-1178. The Complaint identified "Non-User Claimants" (who allegedly never registered) and "Wrong-Tribunal Claimants" (who allegedly were bound by modified Terms requiring ADR Chambers arbitration). *Id.* at 1197 (¶¶ 63–64). At the hearing, Appellees withdrew their challenges to the Non-User Claimants after Appellants submitted evidence establishing they were, in fact, registered users. 1-ER-37. This appeal concerns only the Wrong-Tribunal Claimants.

On April 22, 2025, Appellees moved to compel arbitration before ADR Chambers and to enjoin the AAA proceedings. 5-ER-945. On August 28, 2025, Appellants opposed and moved to dismiss. 5-ER-908.

8

## H. The District Court's Order

On January 8, 2026, the district court granted Appellees' motion as to the Wrong-Tribunal Claimants, holding they "are subject to the modified terms requiring them to arbitrate before ADR Chambers in Ontario, Canada." 1-ER-45–46.

The court rejected each of Appellants' arguments. On opt-out, it held that Appellants could not opt out because Section 12.7 permits opt-out only for users who "have not previously agreed to an arbitration agreement." *Id.* at 38. On assent, the court found German's testimony that users "cannot log in to the websites without agreeing" to the Terms sufficient, concluding that Appellants had not rebutted this evidence. *Id.* at 38-41. On retroactivity, the court relied on Section 12.2's "past, pending, or future disputes" language and concluded this "clearly implicates that 'pending' claims like those already proceeding through informal dispute resolution are to be resolved through the modified arbitration proceedings in ADR Chambers." *Id.* at 42.

The court also held that the agreement falls under the Convention because it "clearly contemplates enforcement abroad": the agreement selects Ontario, Canada, as the forum and Canadian law as the governing law. *Id.* at 43-44. Finally, the court declined to consider Appellants' unconscionability defense, citing *Bautista v. Star*

9

*Cruises* for the view that the Convention's null and void exception is limited to defenses "applied neutrally on an international scale." *Id.* at 44-45.

## SUMMARY OF ARGUMENT

This Court should reverse for any one of four independent reasons. Each argument standing alone warrants reversal; this Court need not reach the others.

I. **The Convention does not apply.** Under 9 U.S.C. § 202, an arbitration agreement between U.S. citizens falls under the Convention only if the underlying relationship has a "reasonable relation with one or more foreign states." The Second Circuit has held that this relation "cannot be fulfilled by the terms of the [agreement] itself"; a foreign forum-selection clause cannot be a "self-generating basis for jurisdiction." *Jones v. Sea Tow*, 30 F.3d 360, 366 (2d Cir. 1994). Many federal courts have followed this principle. Here, the underlying relationship is entirely domestic: American consumers used platforms offered by Delaware LLCs in U.S.-based transactions. The only Canadian elements are drafting choices in the arbitration clause. The district court, therefore, should have analyzed Appellees' requested relief under Chapter 1 of the Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 1-16, not Chapter 2, 9 U.S.C. §§ 201-208. That matters because Section 4 of the FAA does not authorize a California district court to compel arbitration in Ontario. Chapter 1 also preserves Appellants' ordinary contract defenses, including unconscionability.

II.     **Appellees failed to meet their burden to demonstrate assent to the modified forum-selection provisions**. To establish assent in this online-modification context, Appellees had the burden to demonstrate reasonably conspicuous notice of the modified Terms and conduct unambiguously manifesting assent to those Terms. *See Godun v. JustAnswer LLC*, 135 F.4th 699, 709–10 (9th Cir. 2025) (quoting *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022)). The district court treated a generic website update prompt containing a laundry list of modified documents as assent to a litigation-altering forum switch. That was error for three independent reasons. First, Appellees' proof did not establish what any Appellant actually saw or when. They submitted one undated Zula "example" screenshot, no Sportzino screenshot, and conclusory testimony about database queries and login activity. That evidence does not meet their initial burden that would enable or require an individual Appellant to oppose, nor does it satisfy the summary-judgment standard. Second, even assuming Appellants saw Appellees' example prompt, the manner of communication precludes reasonably conspicuous notice. The prompt referred generically to updates across multiple documents; it did not identify the arbitration provision, the substitution of ADR Chambers for the AAA, the move to Ontario, the fee consequences, or any purported application to disputes already invoked under the prior AAA Terms. Appellees also knew Appellants were represented in connection with those disputes, yet presented

11

the purported modification through an account-access prompt rather than through counsel. No reasonably prudent consumer in that posture would understand the prompt to reroute pending AAA disputes to a foreign arbitral forum. Third, Appellants expressly rejected the modification in writing. That rejection precludes any finding that their conduct unambiguously manifested assent to the modified forum-selection provisions.

III.     **The modified forum-selection provisions do not apply retroactively.** The district court conflated the scope provision (Section 12.2, stating that arbitration is required for "past, pending, or future" disputes) with the forum-selection provisions (Sections 12.5-12.6, using forward-looking language). But Section 12.2 was unchanged by the modification. The "past, pending, or future" language ensures disputes are arbitrable; it says nothing about which forum governs disputes already initiated under the original Terms.

IV.     **Even if the Convention applies, the unconscionability defense remains available under Article II(3).** Article II(3) "contains no exclusionary language" and does not displace domestic contract law. *GE Energy Power Conversion France SAS v. Outokumpu Stainless USA, LLC*, 590 U.S. 432, 440 (2020). Whether this Court applies Ontario or California law, unconscionability is available as a defense. The district court's categorical refusal to consider it was error.

12

**ARGUMENT**

**I.   THE CONVENTION DOES NOT APPLY BECAUSE THE UNDERLYING RELATIONSHIP IS ENTIRELY DOMESTIC**

**Preservation and Standard of Review.** This Court reviews de novo whether an arbitration agreement falls under the Convention. *See Jones Day v. Orrick, Herrington & Sutcliffe, LLP*, 42 F.4th 1131, 1134-35 (9th Cir. 2022). Appellants raised this issue in the district court at 5-ER-930–32 and 2-ER-64–65; the district court ruled on it at 1-ER-42–46.

The Convention does not apply to this dispute. Under 9 U.S.C. § 202, an arbitration agreement "entirely between citizens of the United States" falls under the Convention only if the underlying relationship "involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states." A foreign forum-selection clause cannot supply that relation and (1) the district court erred in holding otherwise, and (2) its own authorities support reversal.

**A.   The Convention Requires a Foreign Element Independent of the Arbitration Clause**

The district court held that the Convention applies because the modified arbitration agreement "clearly contemplates enforcement abroad": it selects Ontario,

13

Canada, as the forum and Canadian law as the governing law. 1-ER-43–44. This was error.

The Second Circuit's decision in *Jones v. Sea Tow Services Freeport NY Inc.*, 30 F.3d 360 (2d Cir. 1994), is directly on point and has been followed by many federal courts. There, the district court held that the Convention applied because a salvage agreement designated London as the arbitral forum and English law as governing. The Second Circuit reversed:

> The reasonable relation requirement necessary to make the arbitration provision in the [agreement] cognizable under the Convention cannot be fulfilled by the terms of the [agreement] itself. If it could, the [agreement] would become a self-generating basis for jurisdiction.

*Id.* at 366. The court emphasized that "there is no connection with England independent of the [agreement]" and that "it is not sufficient that English law was to be applied in the resolution of the . . . dispute and that the arbitration proceeding was to be held before an English arbitrator in England." *Id.* Other federal courts have reached the same conclusion. *See Roland Reinholtz v. Retriever Marine Towing & Salvage*, No. 92-14141-CIV-DAVIS, 1993 U.S. Dist. LEXIS 21598, at *16-18 (S.D. Fla. May 21, 1993); *Brier v. Northstar Marine, Inc.*, Civil Action No. 91-597(JFG), 1992 U.S. Dist. LEXIS 20931, at *25-29 (D.N.J. Apr. 28, 1992) (foreign arbitral site alone insufficient to establish "reasonable relation").

The principle is straightforward: a party cannot invoke the Convention simply by drafting an arbitration clause selecting a foreign forum. There must be an

14

important foreign element in the underlying commercial relationship, independent of the drafting choices in the agreement.

Here, Appellees are Delaware LLCs operating online gaming platforms serving American consumers. 6-ER-1187 (¶¶ 5-6). Appellants reside in California, Oregon, Nevada, New York, and New Jersey. *Id.* at 1195 (¶ 55). The platforms are accessed from the United States. The consumer transactions occurred in the United States. The only Canadian element is a contract drafting choice: the modified arbitration clause selects ADR Chambers in Ontario and Ontario law. Under *Jones*, such drafting choices cannot supply the "reasonable relation" that Section 202 requires.

Indeed, Appellees identified no case in which the Convention has been applied to a domestic consumer dispute. The legislative history confirms why: the chairman of the advisory committee testified that Section 202 "require[s] that any case concerning an agreement or award solely between U.S. citizens is excluded unless there is some important foreign element involved." *See Jones*, 30 F.3d at 365 (quoting S. Rep. No. 702, 91st Cong., 2d Sess. app. at 6 (1970)). An arbitration clause in a domestic consumer dispute selecting a foreign forum is not an "important foreign element" in the underlying relationship.

## B. The District Court's Authorities Support Reversal

The district court cited *Soaring Wind Energy, LLC v. Catic USA Inc.*, 946 F.3d 742 (5th Cir. 2020), and *Zhang v. Dentons US LLP*, 2021 WL 2392169 (C.D. Cal. June 11, 2021). 1-ER-44. Neither supports the court's conclusion.

In *Soaring Wind*, the Fifth Circuit found Convention application because the foreign elements were part of the underlying legal relationship itself: foreign affiliates were bound up in the agreement, foreign conduct could trigger breach, and the resulting award imposed liability tied to those foreign connections. 946 F.3d at 753. Nothing comparable is present here. The consumer-facing relationship reflected in the Terms was between Appellants and SCPS/SSPS. Blazesoft may have provided operational services behind the scenes, but an internal corporate structure does not itself answer Section 202's question whether the underlying legal relationship had the requisite foreign nexus. *See id.* (noting that "[i]t is not enough, however, that one party, though a U.S. citizen, should happen to bear foreign corporate parentage"); *see also Access Info. Mgmt. of Haw., LLC v. Shred-It Am., Inc.*, No. 10-00622, 2010 U.S. Dist. LEXIS 116862, at *17 (D. Haw. Nov. 2, 2010) (treating foreign-corporate ties as "irrelevant" unless they define the actual legal relationship between the contracting parties). The only Canadian connection the district court actually identified here was the arbitration provision's own forum and choice-of-law language.

16

*Zhang* does not support the district court's conclusion. *Zhang* considered forum and choice-of-law provisions, but only as part of determining whether the parties' legal relationship had the foreign character required by Section 202. 2021 WL 2392169, at *6-8. It held the Convention did not apply because the agreement was domestic: U.S. parties, Delaware law, arbitration in Chicago or New York, and enforcement in U.S. courts. *Id.* That a domestic forum and domestic law helped confirm the absence of Convention jurisdiction does not mean foreign forum and choice-of-law provisions, standing alone, have the opposite effect. Stated differently, *Zhang* does not establish that an arbitration agreement's foreign forum and choice-of-law provisions can be a "self-generating basis for jurisdiction." *Jones*, 30 F.3d at 366.

Accepting the district court's reasoning would mean any domestic company could invoke the Convention and strip consumers of state-law defenses simply by drafting an arbitration clause selecting a foreign forum. A California company serving California consumers could require arbitration in Indonesia or the Cayman Islands, and U.S. courts would be powerless to consider an unconscionability defense. The Convention was designed to facilitate international commercial arbitration, not to allow domestic companies to evade state consumer protection laws by selecting a foreign forum. As one district court explained in rejecting Convention coverage of a London arbitration clause between two U.S. citizens, "despite the

federal policy favoring arbitration, upholding a foreign arbitration provision in an agreement between two U.S. citizens would thwart the stated public policy of Congress in enacting § 202. In other words, parties cannot contract around § 202." *Ensco Offshore Co. v. Titan Marine, L.L.C.*, 370 F. Supp. 2d 594, 600 (S.D. Tex. 2005).

Because the underlying relationship is entirely domestic (American consumers, platforms offered by Delaware LLCs, U.S.-based transactions) and the only foreign elements are drafting choices in the arbitration clause, the Convention does not apply. The district court therefore should have analyzed Appellees' requested relief under Chapter 1 of the FAA, not Chapter 2.

Appellees may point to two recent district-court orders involving overlapping corporate defendants—*Ambrosia v. Blazesoft, Ltd.*, No. 25 C 1723, 2025 WL 2976477 (N.D. Ill. Oct. 21, 2025), and *Boatner v. SSPS LLC*, 2025 U.S. Dist. LEXIS 232112 (S.D.N.Y. Nov. 25, 2025). Neither reaches the issues presented here. Blazesoft, Ltd.—the Canadian entity whose operational services supply the putative foreign nexus—was a named defendant in both sister cases; it is not a party here. In both, the plaintiffs, represented by the same firm, took strategic positions that left the Section 202 "reasonable relation" question unlitigated. *See Ambrosia*, Dkt. No. 56 at 2 (plaintiffs stipulating that "all factors necessary for the application of the Convention" were satisfied); *Boatner*, 2025 U.S. Dist. LEXIS 232112, at *4

18

(plaintiff's opposition premised on the argument that the parties' chosen Ontario law, not federal common law, governed the Convention's null and void inquiry).

Both decisions are on interlocutory review—the Seventh Circuit granted permission to appeal in *Ambrosia*, No. 26-8002 (7th Cir. Feb. 26, 2026), and the appeal was docketed as No. 26-1455 (7th Cir. Mar. 6, 2026); the *Boatner* petition is pending, No. 26-241 (2d Cir.). Neither addresses the Section 202 question Appellants press here; nor does either answer whether, after *GE Energy*, a court may consider unconscionability before compelling arbitration of an adhesion-based forum switch.

### C. The District Court's Error in Applying the Convention Rather Than Chapter 1 Was Dispositive

The district court's error in analyzing the agreement under the Convention was dispositive, as its order cannot stand under Chapter 1 for two independent reasons.

First, Section 4 provides that the "hearing and proceedings" under an order compelling arbitration must occur "within the district in which the petition for an order directing such arbitration is filed." 9 U.S.C. § 4; *see also Bauhinia Corp. v. China Nat'l Mach. & Equip. Imp. & Exp. Corp.*, 819 F.2d 247, 250 (9th Cir. 1987). Because Appellees filed in the Central District of California, Section 4 did not authorize the district court to compel arbitration in Ontario.

19

Second, Section 2 makes arbitration agreements enforceable except "upon such grounds as exist at law or in equity for the revocation of any contract," including unconscionability. 9 U.S.C. § 2. The district court was required to consider Appellants' defenses, including unconscionability, and it did not. On either basis, the order should be reversed.

## II. APPELLEES FAILED TO PROVE ASSENT TO THE MODIFIED FORUM-SELECTION PROVISIONS

**Preservation and Standard of Review.** This Court reviews de novo an order compelling arbitration, including legal conclusions regarding the existence of a valid agreement to arbitrate. *Ahlstrom v. DHI Mortg. Co., L.P.*, 21 F.4th 631, 634 (9th Cir. 2021). Appellants raised this issue in the district court at 5-ER-928–29; the district court ruled on it at 1-ER-38-42.

A motion to compel arbitration is evaluated under the summary judgment standard. *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021). The proponent must establish the agreement's existence by a preponderance of the evidence. *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014); *see also Johnson v. Walmart Inc.*, 57 F.4th 677, 681 (9th Cir. 2023). If genuine disputes of material fact exist regarding formation, the court cannot compel arbitration. *Hansen*, 1 F.4th at 672.

Where the proponent relies on an online interface to establish assent to modified terms, it must prove "reasonably conspicuous notice of the terms to which the consumer will be bound" and conduct "unambiguously manifest[ing] . . . assent." *See Godun v. JustAnswer LLC*, 135 F.4th 699, 709 (9th Cir. 2025) (*quoting Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022)). The same principles apply to modifications: the movant must prove notice of the revised terms and assent to them. *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1099–1101 (9th Cir. 2023).

Appellees satisfy neither element as to the modified forum-selection provisions they seek to enforce. As a threshold matter, (1) their evidence fails to establish what any Appellant actually saw and when. Beyond that evidentiary failure, (2) the manner of communication precludes reasonably conspicuous notice: given how Appellees presented the modification, no reasonable person would have understood it to affect pending disputes, and the parties' objective conduct confirms that understanding. Finally, (3) assent cannot be "unambiguous" where Appellants explicitly rejected the modification in writing. Each of these grounds independently requires reversal.

## A. Appellees' Evidence Lacks Foundation

Appellees cannot establish "reasonably conspicuous notice" because their evidence fails to show what any Appellant actually saw or when. An "exemplary"

image is insufficient; Appellees need to prove the "versions" each user "would have seen during the relevant time period." *Snow v. Eventbrite, Inc.*, No. 3:20-cv-03698-WHO, 2020 U.S. Dist. LEXIS 193249, at *12 (N.D. Cal. Oct. 19, 2020). The one "example" screenshot does not establish what any specific Appellant saw on any specific date. *See id*. at *12-13; *see also Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 235 (2d Cir. 2016) (vacating a dismissal based on mandatory arbitration where the defendant's evidence failed to establish what the plaintiff actually saw, noting "there is nothing in the record to suggest that the … [p]age did not change" over the relevant period).

Appellees' evidence falls far short of this standard. The German Declaration asserts that a user who logged in after June 28, 2024, "was required to accept the revised Terms and Conditions" and would not have been "allowed to log in" if they refused. 5-ER-1002-03 (¶¶ 18, 20). But German provides no underlying records or individualized evidence to substantiate these assertions. He attached a single, undated screenshot described as an "example" for Zula Casino; no screenshot was provided for Sportzino. *Id*. at 1001 (¶ 12); 6-ER-1164. There is no evidence that the interface remained unchanged over the seven-month period at issue, no evidence of how the screen appeared on different devices or browsers, and no evidence of what any specific Appellant saw on any specific date.

An "example" is not enough to establish what any specific Appellant actually saw. At a minimum, these evidentiary gaps precluded a finding, as a matter of law, that each Appellant received reasonably conspicuous notice of the modified forum-selection provisions and unambiguously assented to them.

The district court's contrary analysis inverted the summary-judgment burden. Appellees bore the initial burden to prove formation by competent evidence. If the movant fails to carry that initial burden, "the nonmoving party has no obligation to produce anything." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). Appellees submitted one undated Zula "example," no Sportzino screen, no dated screenshots, and no individualized records showing what any Appellant saw. Nor did they even identify the specific date that each Appellant allegedly saw anything. Appellants were not required to disprove a showing Appellees never made. For this reason alone, the motion should have been denied.

## B. Appellees Did Not Provide Reasonably Conspicuous Notice That the Modification Would Apply to Pending Disputes

Even if Appellees' example prompt was sufficient to show assent to ordinary prospective updates, it did not provide reasonably conspicuous notice of the litigation-altering use Appellees assert here. Reasonably conspicuous notice is assessed from the standpoint of a reasonably prudent user and in light of both the interface and the transaction's context. *Berman*, 30 F.4th at 856; *Godun*, 135 F.4th

at 709–12. Important terms must be prominently disclosed, not buried in a routine presentation of other terms. *Berman*, 30 F.4th at 857. That standard is not satisfied here for three independent reasons.

First, the prompt gave only a generic notice that multiple documents had been updated. It did not identify the arbitration provision, the substitution of ADR Chambers for the AAA, the move from the United States to Ontario, the fee consequences, or any purported application to disputes already initiated through counsel. Appellants had retained counsel and invoked the AAA dispute process before the June 28 modification. A reasonably prudent consumer in that posture would not understand a generic update prompt covering six documents to retroactively reroute pending represented disputes to a foreign arbitral forum.

Second, the modified forum language describes a prospective process, not a transfer of pending disputes. Section 12.5 is titled "INITIATING ARBITRATION" and describes how parties "may seek arbitration" "[f]ollowing the conclusion of the initial dispute resolution process." 5-ER-1047; 6-ER-1125. That language concerns how to begin arbitration; it does not alert a represented claimant that a pending dispute already invoked under the prior AAA Terms will be transferred to a different forum.

Third, a represented party has no reason to expect litigation-altering terms to arrive outside the attorney-client channel. In *Dasher v. RBC Bank (USA)*, 882 F.3d

24

1017, 1021–24 (11th Cir. 2018), the Eleventh Circuit found no meeting of the minds where a bank sent a "purportedly retroactive and litigation-ending amendment" directly to an account holder, even though it knew he was represented in the pending litigation. The court emphasized that, "in this narrow context," it could not overlook the failure to direct the "purportedly court-evicting proposed amendment through known litigation counsel." *Id*. at 1021. That reasoning applies here: Appellees knew Appellants were represented before they presented the modification, yet they presented the modification through a website update prompt rather than through counsel. 6-ER-1195 (¶ 49); 2-ER-116 (¶ 18).

*Russell v. Citigroup, Inc.*, 748 F.3d 677 (6th Cir. 2014), applied the same objective-expectations analysis to a mid-litigation arbitration agreement. There, the employer sought to compel arbitration of a lawsuit already in progress based on an agreement the employee signed after the case began. The Sixth Circuit held the agreement did not reach the pending case, relying in part on the parties' conduct. The employee signed without consulting litigation counsel and continued litigating, which "would make little sense" if he understood the agreement to cover the pending case. *Id*. at 680. As for the employer, the court found it "doubly improbable" that the company expected the agreement to govern pending litigation because it had not consulted litigation counsel and sent the agreement directly to the represented plaintiff rather than to counsel. *Id*.

The same objective circumstances are present here. Appellees received Appellants' dispute notices and knew Appellants were represented, then presented the modification through a website update prompt rather than through known counsel. That method of communication is inconsistent with an expectation that Appellants would understand the prompt to alter pending represented disputes. Appellants' conduct points the same way: they proceeded under the original AAA Terms and expressly rejected the modification. Taken together, the parties' conduct does not support a finding that Appellants received reasonably conspicuous notice that clicking through a generic update prompt would transfer their pending AAA disputes to ADR Chambers in Ontario.

The district court treated generic notice of updated documents as reasonably conspicuous notice of a specific retroactive forum switch. That was error. The relevant question is not whether users may accept ordinary prospective updates online; it is whether Appellees gave reasonably conspicuous notice that this update would displace pending, represented AAA disputes and reroute them to a foreign forum. For the reasons above, Appellees failed to make that showing, and reversal is warranted.

26

## C. Appellants' Express Rejection Precludes a Finding of Unambiguous Assent

Even if Appellees established notice, they cannot establish the second *Berman* element: that Appellants' conduct "unambiguously manifests . . . assent." 30 F.4th at 856. The reason is straightforward: Appellants explicitly rejected the modification in writing.

On July 23 and August 20, 2024, Appellants sent letters stating that Appellants "unequivocally reject and opt out of the changes to the terms of the arbitration agreement" and intended "to enforce the agreement effective March 7, 2024, that was mutually entered into prior to the attempted changes." 2-ER-116–17, 213–14, 216. Appellants' explicit written rejection negates any inference of assent that might otherwise arise from conduct such as clicking a confirmation button.

The district court's Section 12.7 analysis misses the point. 1-ER-38. The question is not whether the contract supplied a formal opt-out mechanism. The question is whether Appellees proved mutual assent to the modification. Contract formation requires a meeting of the minds, and an express rejection is inconsistent with unambiguous assent. Appellants' letters were not merely invoking Section 12.7. They were an objective manifestation of non-assent to the modification itself.

California courts have squarely addressed this situation. In *Mar v. Perkins*, 102 Cal. App. 5th 201, 207-08 (2024), an employer modified its employment terms

27

to require arbitration and told the employee that continued employment would constitute acceptance. The employee immediately rejected, stating he refused to be bound. *Id.* The employer did not terminate him; the employee continued working for 19 months. *Id.* Notably, the employer offered no mechanism to decline the arbitration provision; it simply announced that continued employment would constitute acceptance. *Id.* at 207. Despite this, the court held that no agreement to arbitrate was formed because the employee's explicit rejection precluded any meeting of the minds:

> Where an employee promptly and unequivocally rejects an arbitration agreement as a modified term of employment, mutual assent to arbitrate is lacking. If [the employer] did not want [the employee] to continue his employment without an arbitration agreement, it had a simple remedy—to terminate him. It did not.

*Id.* at 218. Just as continued employment did not establish assent in the face of an express rejection, Appellants' continued platform use cannot establish unambiguous assent to the modified forum-selection provisions in the face of their written rejection. That the Terms may not have provided a mechanism to opt out is beside the point. *Mar* addressed this situation precisely: the employer offered no way to reject the arbitration provision, yet the court held that an explicit rejection nonetheless precluded assent.

At a minimum, Appellants' rejection letters created a genuine dispute as to whether any assent to the modified forum-selection provisions was unambiguous.

28

The district court treated the letters as ineffective because Section 12.7 did not provide a contractual opt-out right. 1-ER-38. But the formation question is not whether Appellants invoked a contractually authorized opt-out; it is whether Appellees proved mutual assent to the modification. In light of Appellants' express written rejection, Appellees failed to carry that burden. Reversal is warranted on this ground as well.

Any one of these failures is sufficient. Appellees' evidence did not establish what any Appellant actually saw or when; their generic update prompt did not provide reasonably conspicuous notice that pending, represented AAA disputes would be rerouted to ADR Chambers in Ontario; and Appellants expressly rejected the modification in writing. Because Appellees failed to prove assent to the modified forum-selection provisions, the order compelling arbitration should be reversed.

## III. THE MODIFIED FORUM-SELECTION PROVISIONS DO NOT APPLY TO DISPUTES ALREADY INVOKED UNDER THE ORIGINAL TERMS

**Preservation and Standard of Review.** Contract interpretation is reviewed de novo. *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 2000). Appellants raised this issue in the district court at 5-ER-929–30 and 2-ER-62–63; the district court ruled on it at 1-ER-42.

Even assuming *arguendo* that Appellants assented to the modified Terms in some form, the new forum-selection provisions do not apply retroactively to disputes already invoked under the original Terms because (A) the district court's contrary holding conflated the unchanged scope provision with the changed forum provisions, (B) even setting that error aside, the forum-selection provisions are prospective by their own language and do not reach disputes already initiated, and (C) the cases the district court cited do not compel a different result.

## A. The District Court Conflated the Scope Provision with the Forum-Selection Provisions

The district court held that the modified forum-selection provisions apply because Section 12.2 states that the arbitration agreement governs "past, pending, or future disputes." 1-ER-42. This analysis conflates two distinct contractual provisions.

Section 12.2 is a scope provision: it defines which disputes are subject to arbitration, providing that "past, pending, or future" disputes "shall be determined by arbitration." 5-ER-1046; 6-ER-1124. This ensures that disputes are arbitrable rather than litigable. Sections 12.5 and 12.6, by contrast, are forum provisions: they specify where and how arbitration proceeds by identifying the provider and location. 5-ER-1047–49; 6-ER-1125–27.

30

The "past, pending, or future" language appears only in Section 12.2. It does not appear in Sections 12.5 or 12.6. *Compare* 5-ER-1022–25 *with* 5-ER-1046–49. And Section 12.2 was unchanged by the June 28, 2024, modification. Only Sections 12.5 and 12.6 changed, substituting ADR Chambers for the AAA and Ontario for Washington, D.C.

The district court treated the unchanged scope provision as if it modified the changed forum-selection provisions. But the "past, pending, or future" language ensures arbitrability; it says nothing about which forum governs disputes already being prosecuted.

## B. The Language of the Forum-Selection Provisions is Prospective

The forum-selection provisions use prospective language. Section 12.5 is titled "INITIATING ARBITRATION" and describes how parties "may seek arbitration" "[f]ollowing the conclusion of the initial dispute resolution process." 5-ER-1047. The very title of the section signals that it governs how to begin new arbitrations. "May seek" and "following" are forward-looking terms: they govern how to initiate arbitration, not how to redirect arbitration already underway.

Appellants had already invoked the contractual dispute-resolution process under the original Terms. They sent dispute notices invoking AAA arbitration before June 28, 2024, which Section 12.4 identifies as beginning the arbitration process. 2-ER-116 (¶ 18), 156, 158; 1-ER-40. They filed formal demands with the AAA in

31

August 2024. 2-ER-117 (¶¶ 22-23), 217, 233. At the time they invoked that process, the Terms required AAA arbitration in Washington, D.C., "except as otherwise may be required by the AAA Rules." 5-ER-1025; 6-ER-1100.

To apply the modified forum-selection provisions retroactively would require language that the Terms do not contain, language stating that pending arbitrations must be transferred to a new forum. The natural reading is that the forum provisions govern newly initiated arbitrations, while arbitrations already initiated proceed under the forum selected at initiation.

A contrary interpretation would produce absurd results. *See Revitch v. DIRECTV, LLC*, 977 F.3d 713, 717 (9th Cir. 2020) (contract language is interpreted to avoid absurd results). If a company could modify its forum-selection provisions after receiving dispute notices, and apply those modifications to disputes already initiated, it could engage in infinite delay. Each time claimants initiated arbitration, the company could switch forums, forcing claimants to start over. The Terms require 30 days' notice before initiating arbitration; during that window, a company could repeatedly change the rules. This Court should not adopt an interpretation that transforms the dispute-notice requirement into a perpetual trap.

*Russell* also supports this reading. There, the court refused to apply an arbitration clause to a pending lawsuit, reasoning that the contract's present-tense language ("disputes … which … arise") suggested it governed "only disputes that

32

begin—that arise—in the present or future," not disputes already pending. 748 F.3d at 679. Here, Appellants had already invoked the contractual dispute-resolution process under the original Terms. The modified forum-selection provisions, which describe how parties "may seek arbitration" (5-ER-1047; 6-ER-1125), do not reach disputes already underway.

## C. The District Court's Authorities Do Not Compel a Different Result

The district court relied on *Trudeau v. Google LLC*, 349 F. Supp. 3d 869 (N.D. Cal. 2018), and *Franco v. Greystone Ridge Condominium*, 39 Cal. App. 5th 221 (2019). 1-ER-40–41. Neither supports applying the modified forum-selection provisions to disputes already invoked under the original AAA Terms.

*Trudeau* is distinguishable. There, the plaintiff accepted revised terms before filing suit, and the dispute was whether a new arbitration provision covered claims that had already accrued. 349 F. Supp. 3d at 876. Google also gave direct notice by email and account alert, expressly warned that the new terms included binding arbitration, and provided a 30-day opt-out procedure. *Id*. at 873-74. Trudeau accepted the revised terms and did not attempt to opt out. *Id*. at 874. Most importantly, the arbitration provision expressly covered "claims that arose before" acceptance of terms containing an arbitration provision. *Id*. at 877-78. *Trudeau* therefore involved arbitration-specific notice, no attempted opt-out, and express

33

retroactive language. It did not involve a midstream forum change after claimants had already invoked an earlier contractual dispute process.

*Franco* is also distinguishable. There, the employer presented the arbitration agreement before any lawsuit or arbitration was pending; the employee filed suit about ten days later and signed the agreement two days after that without objection. 39 Cal. App. 5th at 223-24. The agreement also used broad retroactive language, covering "[a]ny and all claims" relating to employment from "pre-hire through post-termination." *Id*. at 223-24. The court emphasized that the agreement was "clear, explicit, and unequivocal" and contained "no qualifying language limiting its applicability to claims that had yet to accrue." *Id*. at 223-24.

Later California authority underscores the limits of *Franco*. In *Semprini v. Wedbush Securities Inc.*, 101 Cal. App. 5th 518 (2024), the Court of Appeal distinguished *Franco* because it did not involve pending litigation and because "the employer presented the arbitration agreement to the plaintiff before she filed the lawsuit." *Id*. at 531. *Semprini* also recognized the concerns raised when a party contacts represented persons during pending litigation to obtain arbitration agreements affecting that litigation. *Id*. Those concerns are present here: Appellees knew Appellants were represented, yet communicated the modification through a website update prompt rather than through counsel.

34

This case is materially different from both *Trudeau* and *Franco*. Appellants had already sent dispute notices under the original AAA Terms before the June 28 modification. Appellants then expressly rejected the modification in writing. And the changed forum-selection provisions contain no language comparable to *Trudeau*'s "claims that arose before" clause or *Franco*'s "pre-hire through post-termination" formulation. Section 12.5 is titled "INITIATING ARBITRATION" and describes how parties "may seek arbitration" "[f]ollowing the conclusion of the initial dispute resolution process." 5-ER-1047; 6-ER-1125. That language describes how to begin arbitration going forward. It does not require pending disputes to be transferred to ADR Chambers.

The district court therefore erred in relying on *Trudeau* and *Franco*. The "past, pending, or future" language in Section 12.2 defines which disputes are arbitrable; it says nothing about where those disputes are heard. The changed forum-selection provisions use prospective language and contain no mandate to transfer pending arbitrations. Because Appellants had already invoked the contractual dispute-resolution process under the original Terms, the modified forum-selection provisions do not apply to their disputes. Reversal is warranted on this independent basis.

35

## IV. UNCONSCIONABILITY IS AVAILABLE AS A DEFENSE UNDER THE CONVENTION

**Preservation and Standard of Review.** Whether unconscionability is available as a defense under the Convention is a question of law reviewed de novo. *See Rogers v. Royal Caribbean Cruise Line*, 547 F.3d 1148, 1151 (9th Cir. 2008). Appellants preserved the unconscionability issue in the district court at 5-ER-932–37 and 2-ER-65–74, including the Article II(3) null and void argument at 2-ER-66; the district court declined to consider the defense at 1-ER-42–45.

The district court declined to consider unconscionability because it believed that, once the Convention applied, the defense was for the arbitrator unless Appellants showed it could be "applied neutrally" on an international scale. 1-ER-44–45. The court also stated that Appellants "do not appear to argue" otherwise. *Id.* at 44. Both conclusions were wrong. Appellants cited *Rogers*, 547 F.3d at 1158, for the proposition that unconscionability may be considered under Article II(3)'s null and void exception. 2-ER-66. And, as explained below, Article II(3) does not categorically displace generally applicable contract defenses.

The district court erred in categorically refusing to consider this defense because (A) the Supreme Court's decision in *GE Energy* establishes that Article II(3) does not foreclose domestic defenses; (B) the district court nonetheless relied on *Bautista*, but that decision predates *GE Energy* and is inconsistent with it; (C) this

36

Court has previously assumed a narrower version of this rule in *Rogers*, looking to the law specified in the parties' choice-of-law clause to evaluate an Article II(3) defense; and (D) under this framework, unconscionability is available as a defense, and the district court erred in refusing to consider it.

### A. GE Energy Establishes That Article II(3) Does Not Foreclose Domestic Defenses

Article II(3) requires courts to refer parties to arbitration "unless [the court] finds that the said agreement is null and void, inoperative or incapable of being performed." The Convention does not define these terms.

In *GE Energy Power Conversion France SAS v. Outokumpu Stainless USA, LLC*, 590 U.S. 432 (2020), the Supreme Court addressed the scope of Article II(3). The Court held that "Article II(3) contains no exclusionary language; it does not state that arbitration agreements shall be enforced *only* in the identified circumstances." *Id.* at 440 (emphasis in original). The Court explained that "[g]iven that the Convention was drafted against the backdrop of domestic law, it would be unnatural to read Article II(3) to displace domestic doctrines in the absence of exclusionary language." *Id.* The Convention "requires courts to rely on domestic law to fill the gaps." *Id.* at 441.

The statutory framework reaches the same result. Section 208 applies Chapter 1 of the FAA to Convention proceedings "to the extent that [it] is not in conflict

with" Chapter 2 or the Convention. 9 U.S.C. § 208. Section 2 of the FAA in turn preserves "such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. After *GE Energy*, there is no conflict between Section 2's preservation of contract defenses and Article II(3)'s null and void exception, so Section 2 operates within Convention proceedings and preserves unconscionability as a defense.

Together, *GE Energy* and the statutory framework foreclose any categorical exclusion of domestic contract doctrines under Article II(3). Whether the inquiry proceeds under California law or under Ontario law, domestic contract defenses, including unconscionability, remain available.

## B. The District Court Erred in Following Bautista

The district court relied on *Bautista v. Star Cruises*, 396 F.3d 1289 (11th Cir. 2005), for the proposition that the "null and void" clause encompasses only defenses "that may be applied neutrally on an international scale," and thus declined to address whether the modified Terms were unconscionable. 1-ER-44–45 (quoting *Bautista*, 396 F.3d at 1302-03 (internal quotation marks omitted)).

*Bautista* predates the Supreme Court's decision in *GE Energy*. In *GE Energy*, the Court rejected the argument that the Convention impliedly preempts state-law doctrines, holding that Article II(3) "contains no exclusionary language" and should not be read "to displace domestic doctrines." 590 U.S. at 440-41. While *GE Energy*

38

addressed equitable estoppel rather than unconscionability, its reasoning undermines *Bautista*'s categorical exclusion: if the Convention does not preempt state-law doctrines that expand enforcement of arbitration agreements, it should not preempt state-law doctrines that limit enforcement where agreements are fundamentally unfair. And if Article II(3) categorically excluded all doctrines lacking a uniform international definition, equitable estoppel would have been excluded too. *Bautista*'s categorical rule is inconsistent with *GE Energy* and should not be adopted here.[1]

If unconscionability is categorically unavailable under the Convention, domestic companies could draft arbitrarily oppressive terms, select a foreign forum, and claim immunity from judicial review. The district court's approach would immunize the most egregious contract terms from scrutiny, so long as the drafter is clever enough to invoke a foreign arbitral forum. The null and void exception exists precisely to prevent such outcomes.

### C. This Court's Precedent Supports Applying Domestic Contract Defenses

Even before *GE Energy* clarified that Article II(3) incorporates domestic contract defenses generally, this Court applied a narrower version of that principle,

---

[1] The *Bautista* line has been criticized as "devoid of any reasoning or analysis." *Lindo v. NCL (Bahamas), Ltd.*, 652 F.3d 1257, 1293 (11th Cir. 2011) (Barkett, J., dissenting).

looking to the law specified in the parties' choice-of-law clause. In *Rogers v. Royal Caribbean Cruise Line*, 547 F.3d 1148 (9th Cir. 2008), this Court assumed unconscionability could render an agreement null and void under the Convention, then analyzed the defense under Florida law, the law specified in the parties' choice-of-law clause. *Id.* at 1158-59; *see also* Restatement (Third) of U.S. Law of Int'l Com. and Investor-State Arb. ("Restatement of Int'l Arb.") § 2.14(b)(1) ("[A] court determines whether an agreement is null and void [under the Convention] in accordance with . . . the law to which the parties have subjected the arbitration agreement[.]"); *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 51 (2d Cir. 2004) (applying the law designated in the parties' choice-of-law clause to the null and void inquiry under the Convention).

Appellants do not concede that the Ontario choice-of-law provision in the modified terms is enforceable. That question need not be resolved here. Even on the narrower framework *Rogers* applied—looking to the law specified in the parties' agreement—unconscionability remains an available defense, and the district court's categorical refusal to consider it was error. At a minimum, the Convention permits this Court to look to the parties' designated law in conducting the null and void inquiry; *GE Energy* confirms that domestic contract defenses are independently available under Article II(3) regardless.

**D. Unconscionability Is Available as a Defense Under Applicable Law**

Whether this Court applies Ontario or California law, unconscionability is available as a defense under Article II(3). The district court erred in categorically refusing to consider it.

Canadian doctrine recognizes unconscionability. In *Uber Technologies Inc. v. Heller*, 2020 SCC 16, [2020] 2 S.C.R. 118, the Supreme Court of Canada held that an arbitration clause requiring a Canadian resident to arbitrate in the Netherlands was unconscionable because the costs and burdens were prohibitive. *Id.* at ¶¶ 4, 55-65, 93-95 (3-ER-410). Canadian appellate courts—including the Court of Appeal for Ontario—have applied the same framework to invalidate analogous clauses. *See Lochan v. Binance Holdings Ltd.*, 2024 ONCA 784, ¶¶ 6–7, 28 (3-ER-398) (online-adhesion arbitration clause imposing prohibitive costs and unilaterally switching to a foreign forum and choice of law was unconscionable); *see also Pearce v. 4 Pillars Consulting Grp. Inc.*, 2021 BCCA 198, ¶ 245 (4-ER-676) (provision unconscionable where it "effectively and practically block[s] access to justice"). California law likewise recognizes unconscionability as a contract defense. Cal. Civ. Code § 1670.5(a); *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 125–26 (2019).

At minimum, the record presented a substantial unconscionability defense. Appellees imposed a standard-form, post-dispute modification on represented consumers after they had already invoked the AAA process, replacing an affordable

41

consumer arbitration forum with a costly foreign tribunal, while taking the position that Appellants had no effective right to reject the modification. Under the original AAA Consumer Rules, consumer filing fees were capped at $225, with the business bearing administrative and arbitrator costs. 2-ER-124 (¶ 49); 3-ER-339. The modification replaced that structure with ADR Chambers rules under which each party bears 50% of daily arbitrator rates of $3,000 to $8,000 CAD. The rules also impose hourly rates of $300 to $750 CAD for additional arbitrator time, a $500 CAD non-refundable consumer filing fee, and venue fees of at least $800 CAD per day. 2-ER-71, 99 (¶ 5).

These costs dwarf the individual claim values and, as in *Heller*, effectively foreclose arbitration as a practical matter. 2020 SCC 16, ¶¶ 4, 55-65 (3-ER-410). The forum-switch also imposes on American consumers the burden of arbitrating in Toronto under Ontario law and procedure. The modification thus bears the hallmarks of unconscionability under both the chosen Ontario law and California law: a standard-form online adhesion contract unilaterally imposed on represented consumers after disputes had been initiated, shifting cost structures in ways that render individual claims economically impossible to pursue.

*GE Energy* establishes that domestic contract defenses apply under Article II(3), and this Court has previously assumed as much in applying a narrower version of that rule. *See Rogers*, 547 F.3d at 1158. California law recognizes

unconscionability, and so does Ontario law—meaning the defense is available regardless of which body of law supplies its substantive content. And, as explained in Section I, *supra*, the defense is independently available under 9 U.S.C. § 2 if the Convention does not apply. The district court's categorical refusal to consider the defense was legal error. For this reason as well, the order should be reversed.

## CONCLUSION

For the foregoing reasons, Appellants respectfully request that this Court reverse the district court's order granting Appellees' motion to compel arbitration before ADR Chambers and enjoining the AAA proceedings. This Court should direct the district court to deny Appellees' motion or, in the alternative, vacate and remand for further proceedings consistent with this Court's opinion.

Dated: May 26, 2026.

Respectfully submitted,

/s/ Michael Kind

| | |
|---|---|
| Michael Kind | Ben Travis |
| KIND LAW | BEN TRAVIS LAW, APC |
| 5071 North Rainbow Boulevard | 12481 High Bluff Drive |
| Suite 110 | Suite 300 |
| Las Vegas, Nevada 89130 | San Diego, California 92130 |
| (702) 337-2322 | (619) 353-7966 |
| mk@kindlaw.com | ben@bentravislaw.com |

*Counsel for Defendants-Appellants*

43

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**

**9th Cir. Case Number**: <u>26-654</u>

I am an attorney for Defendants-Appellants.

**This brief contains 9,005 words,** excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a cross-appeal brief and complies with the word limit of Cir. R. 28.1-1

[ ] is an amicus brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a death penalty case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a larger brief pursuant to Cir. R. 32-2(a).

**Signature** <u>*s/ Michael Kind*</u>           **Date** <u>May 26, 2026</u>

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

**Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6**

**9th Cir. Case Number:** 26-654

The undersigned attorney states the following:

[X] I am unaware of any related cases currently pending in this court.

[ ] I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[ ] I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature** *s/ Michael Kind*           **Date** May 26, 2026

**ADDENDUM**

**Pursuant to Ninth Circuit Rule 28-2.7**

**ADDENDUM**

**TABLE OF CONTENTS**

| Description | Page |
|---|---|
| 9 U.S.C. § 2 | ADD-1 |
| 9 U.S.C. § 4 | ADD-2 |
| 9 U.S.C. § 16 | ADD-3 |
| 9 U.S.C. § 202 | ADD-4 |
| 9 U.S.C. § 203 | ADD-5 |
| 9 U.S.C. § 208 | ADD-6 |
| Cal. Civ. Code § 1670.5(a) | ADD-7 |
| Convention on the Recognition and Enforcement of Foreign Arbitral Awards art. II, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 | ADD-8 |

## 9 U.S.C. § 2

### § 2. Validity, irrevocability, and enforcement of agreements to arbitrate

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

ADD-1

**9 U.S.C. § 4**

**§ 4. Failure to arbitrate under agreement; petition to United States court having jurisdiction for order to compel arbitration; notice and service thereof; hearing and determination**

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. Five days' notice in writing of such application shall be served upon the party in default. Service thereof shall be made in the manner provided by the Federal Rules of Civil Procedure. The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed. If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default, or if the matter in dispute is within admiralty jurisdiction, the court shall hear and determine such issue. Where such an issue is raised, the party alleged to be in default may, except in cases of admiralty, on or before the return day of the notice of application, demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure, or may specially call a jury for that purpose. If the jury find that no agreement in writing for arbitration was made or that there is no default in proceeding thereunder, the proceeding shall be dismissed. If the jury find that an agreement for arbitration was made in writing and that there is a default in proceeding thereunder, the court shall make an order summarily directing the parties to proceed with the arbitration in accordance with the terms thereof.

## 9 U.S.C. § 16

### § 16. Appeals

(a) An appeal may be taken from—
  (1) an order—
    (A) refusing a stay of any action under section 3 of this title,
    (B) denying a petition under section 4 of this title to order arbitration to proceed,
    (C) denying an application under section 206 of this title to compel arbitration,
    (D) confirming or denying confirmation of an award or partial award, or
    (E) modifying, correcting, or vacating an award;
  (2) an interlocutory order granting, continuing, or modifying an injunction against an arbitration that is subject to this title; or
  (3) a final decision with respect to an arbitration that is subject to this title.
(b) Except as otherwise provided in section 1292(b) of title 28, an appeal may not be taken from an interlocutory order—
  (1) granting a stay of any action under section 3 of this title;
  (2) directing arbitration to proceed under section 4 of this title;
  (3) compelling arbitration under section 206 of this title; or
  (4) refusing to enjoin an arbitration that is subject to this title.

# 9 U.S.C. § 202

## § 202. Agreement or award falling under the Convention

An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention. An agreement or award arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states. For the purpose of this section a corporation is a citizen of the United States if it is incorporated or has its principal place of business in the United States.

ADD-4

## 9 U.S.C. § 203

### § 203. Jurisdiction; amount in controversy

An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States (including the courts enumerated in section 460 of title 28) shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy.

## 9 U.S.C. § 208

### § 208. Application

Chapter 1 applies to actions and proceedings brought under this chapter to the extent that chapter is not in conflict with this chapter or the Convention as ratified by the United States. This chapter applies to the extent that this chapter is not in conflict with chapter 4.

**Cal. Civ. Code § 1670.5(a)**

**DIVISION 3. OBLIGATIONS [1427 - 3273.91]**

**PART 2. CONTRACTS [1549 - 1701]**

**TITLE 4. UNLAWFUL CONTRACTS [1667 - 1670.15]**

**1670.5.** (a) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

ADD-7

**Convention on the Recognition and Enforcement of Foreign Arbitral Awards**

**art. II, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38**

**Article II**

1. Each Contracting State shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration.

2. The term "agreement in writing" shall include an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams.

3. The court of a Contracting State, when seized of an action in a matter in respect of which the parties have made an agreement within the meaning of this article, shall, at the request of one of the parties, refer the parties to arbitration, unless it finds that the said agreement is null and void, inoperative or incapable of being performed.